# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JENNIFER STUMPF,             Case No. 1:16-cv-991

    Plaintiff,                      Dlott, J.
                                   Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Jennifer Stumpf filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In March 2014, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on February 19, 2014, based primarily upon residual physical impairments from a January 2004 automobile accident, when Plaintiff was 21 years old. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ. On October 22, 2015, she appeared with counsel and gave testimony before ALJ Mark Hockensmith; a vocational expert also testified. (Tr. 29-66). On November 17, 2015, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 14-24).

1

At 32 years of age at the time of her hearing, Plaintiff was still a younger individual. She has at least a high school education, and completed a couple of years of college coursework. She testified that she lives with her husband, a 9 year old stepdaughter, and two biological children: a son who is 6 years old, and a newborn daughter, aged 3 months. Until she filed for disability benefits in 2014, she worked full-time as a store manager, a light, skilled level of work that she can no longer perform.

The ALJ determined that Plaintiff has severe impairments of osteoarthritis, obesity, bilateral *equinus* deformities, post-traumatic ankle arthritis, and left trochanteric bursitis. (Tr. 16). In addition, the ALJ noted non-severe impairments of asthma and hypertension. Although Plaintiff's counsel argued at the hearing that Plaintiff met or equaled Listing 1.02, the ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 20).

Instead, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of sedentary work, subject to the following limitations:

> (1) Lift and carry 10 pounds occasionally; (2) stand and walk for up to 2-hours in an 8-hour day; (3) sit for 6 hours in an 8-hour day, with the ability to change positions for a minute or two every 30 minutes while remaining at her workstation; (4) no climbing ladders, ropes, or scaffolds; (5) no ramps or stairs; (6) no balancing, stooping, kneeling, crouching, crawling; (7) occasional pushing and pulling with upper and lower extremities; (8) no work at unprotected heights; (9) no work with dangerous machinery; (10) avoid concentrated exposure to fumes, dusts, gases, odors and poorly ventilated areas; (11) no foot controls; and (12) ability to elevate legs at waist level during regular breaks.

(Tr. 17). Considering Plaintiff's age, education, work experience and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still

perform a significant number of jobs in the national economy, including the representative jobs of general office clerk, auditing clerk, and receptionist/information clerk. (Tr. 23). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred in failing to give appropriate weight to one of the limitations endorsed by her treating physician; namely, a limitation that she is required to elevate her legs from two to three hours per day. The vocational expert testified that if an individual were required to elevate their legs for two hours per day, the individual would be precluded from all work.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a

3

whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she

suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's RFC and Her Asserted Need to Elevate Her Legs

Although a restricted RFC to less than the full level of sedentary work would result in a finding of disability for an older individual, the vocational expert testified that in light of Plaintiff's relatively young age and other characteristics, an individual with her RFC can still perform a significant number of jobs in the national economy. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question," as long as the hypothetical question accurately portrays the actual limitations of the Plaintiff. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). In this case, however, Plaintiff argues strenuously that the ALJ erred by failing to include a physical limitation in her RFC that she is required to elevate her legs at least two hours per day.

#### 1. Relevant Medical Evidence and Testimony

There is no dispute that Plaintiff's main complaints relate to residual bilateral ankle injuries that cause an antalgic gate and preclude her from the ability to place her feet flat on the floor as she walks. As a result of her heel differential, she either wears heels or shoe inserts. (Tr. 56). She also has other significant orthopedic injuries, including a reported 2004 hip fracture, a plate in her pelvis and rod in her left femur, plus a 2012 additional fracture of her right foot/ankle that resulted in additional surgeries and cortisone injections. (Tr. 17-19). In addition to her orthopedic impairments, Plaintiff is obese. She is five foot four or five, and weighed 280 pounds at the time of the hearing, down from 320 pounds during her most recent pregnancy.

5

The ALJ found that Plaintiff's level of functional impairment does not meet or equal a listing, because she "is able to ambulate effectively as defined in the regulations." (Tr. 17). Plaintiff has not appealed this Step 3 determination, which is supported by substantial evidence. Even though Plaintiff testified that she needs assistance to walk on bad days from her husband (who works full-time) or through use of a cane, she also admitted that she uses a cane only a few times a month. (Tr. 18).

The ALJ found Plaintiff to be not entirely credible concerning the intensity, persistence, and limiting effects of her limitations, including her asserted need to elevate her legs four to five hours a day. (Tr. 18, 20). The ALJ explained that the testimony was not credible "given her responsibilities of caring for her infant daughter during the day, chauffeuring her older son to and from school, cleaning and doing household chores, etc." (Tr. 20). In addition, the ALJ noted that "her complaints of feet swelling are not particularly well-substantiated by treating sources' clinical examination findings or diagnostic testing." (*Id.*). Plaintiff does not directly challenge that adverse credibility finding, although she indirectly challenges it insofar as she maintains that she needs to elevate her feet and legs during a significant portion of the workday.

Plaintiff testified that her feet swell, and that she elevates them after driving her six-year-old to school in the morning. She later testified that she elevates her feet 3-4 times per day, and that she can only stand for 5 minutes or walk for 10 minutes before needing to sit down. (Tr. 18). She testified that she goes from sitting to standing, and does a little of both each day. (Tr. 45). She can drive 20-30 minutes before needing to stretch. In addition to driving him to and from school, she cares for her 6-year-old after school, as well as the 9-year-old stepdaughter (who lives with them half-time). She also is full-time caretaker for her 12-pound, 3-month old infant daughter since her husband

6

works full-time. However, she testified that she and the baby "kind of stay in one room" all day until her husband returns home from work. (Tr. 19, 35, 48).

The ALJ pointed out that Plaintiff worked full-time (40-45 hours per week) as a store manager in a job that required her to stand and walk most of the day until February 18, 2014. (Tr. 40). The motor vehicle accident that caused her significant injuries occurred a decade prior to that, and there was no "objective evidence changed or worsened" after she quit working. (Tr. 21). Instead, and despite consistent clinical examination findings over the past decade and without any additional diagnostic testing, Plaintiff's long-time orthopedic surgeon, Dr. James Amis of Lonestar Orthopedics, suggested at her appointment on February 18, 2014 that she "consider" seeking long term disability. (Ex 8F/7-9). Dr. Amis told Plaintiff that her only remaining surgical option was ankle fusion surgery, which he was reluctant to perform due to Plaintiff's young age (30 at that time). (Tr. 18).

Other reported injuries, such as her 2004 hip fracture, did not appear to fully support the level of impairment claimed by Plaintiff. For example, Plaintiff sought treatment from Dr. Lindenfield in March 2014 for residual left hip pain, but he found no evidence of gross deformity or past trauma on examination. He did diagnose her with bursitis, gave her an injection, and prescribed physical therapy at that time. However, there was no significant evidence of follow-up treatment or continued left hip difficulties. (Tr. 19). And even Dr. Amis opined that Plaintiff could sit for 8 hours per day, although he suggested she would be limited to two hours at one time. (Tr. 769).

Prior to formulating Plaintiff's RFC, the ALJ carefully reviewed all of the relevant evidence, including the longitudinal treatment records of Dr. Amis, and the even more recent treatment records of Plaintiff's primary care physician. The latter records

7

reflected "slow but continuous improvement" in Plaintiff's symptoms and function, as evidenced in part by her reports of her doing quite well, and being able to cut back on Percocet usage from 2-3 pills per day to only 4 per week. (Tr. 19). The ALJ also found it noteworthy that there were no treatment records from any source in the six month period prior to the hearing. (Tr. 19).

### 2. Medical Opinion Evidence Used to Formulate RFC: Evidence To Support Elevating Legs

In formulating Plaintiff's RFC, the ALJ appropriately reviewed both the RFC opinions offered by Dr. Amis, as well as those offered by two non-examining consulting physicians. The ALJ gave only "some weight" to the latter two physicians, both of whom opined that Plaintiff could perform sedentary work that included standing/walking for up to one hour at a time, or four hours in a day, with few additional restrictions. Neither of the two consulting physicians found that any lower extremity elevation was necessary.

In contrast, the ALJ agreed that Plaintiff should be more restricted, mostly consistent with Dr. Amis's RFC opinions, in part based upon Plaintiff's testimony regarding the difficulties she experienced in her prior store manager position when she was required to stand most of the day. (Tr. 20-21). The one limitation that the ALJ did not adopt from Dr. Amis's opinions was the restriction that she elevate her feet and legs 2 to 3 hours per day. Despite noting that Plaintiff's complaints of swelling were not particularly well-substantiated in her clinical records, the ALJ still found it reasonable to require "the ability to elevate legs to waist level during regular breaks," but with "no indication she requires the ability to do so more frequently or for longer periods than this." (Tr. 20).

8

As Plaintiff concedes, the ALJ was not required to adopt every limitation offered by the treating physician, as long as he gave "good reasons" for excluding the referenced limitation, and the RFC as determined is supported by substantial evidence. In this case, I conclude that the ALJ's analysis satisfies this criteria.

The ALJ explained that he did not find Plaintiff's testimony to be credible, and that there was not significant clinical substantiation of her complaints of swelling or other diagnostic evidence to support the level of elevation offered in Dr. Amis's opinions. In addition, he explained that Dr. Amis's opinions (particularly the alleged need to elevate her legs) were contradictory and undermined by the record in other ways.

> According to Dr. Amis, the claimant was unable to stand, walk, lift, carry, climb, bend, kneel, push, or pull (Ex. 8F/14 [Tr. 435]). However, he had earlier opined identical restrictions (Ex. 8F/94 [Tr. 515]), and yet the claimant continued to work for an additional 18 months thereafter. This time, he estimated the claimant's limitations might last 6-12 months, but also indicated she would be incapacitated for less than that (see, e.g., Ex. 8F/15, 90, 92). Moreover, while Dr. Amis' medical source statements indicate he intended to follow up with the claimant every three months during her period of restrictions, he appears to have released the claimant from his practice in July 2014 (Ex. 13F), fewer than 6 months later. Dr. Frimer's subsequent treatment records reflect the claimant's symptoms and function continued to improve thereafter (Ex. 14F), which calls into question whether Dr. Amis' restrictions are supported over the course of any period lasting at least 12 consecutive months. Indeed, there is no evidence the claimant continues to treat for her impairments or symptoms, or that she has done so since April 2015.
>
> Nevertheless, these limitations are generally supported by the claimant's potential need for ankle fusion surgery at some point in the distant future, as well as by her testimony regarding the issue she experiences with walking/standing all day at her previous job. The major exceptions to Dr. Amis' opinions are that he checked a line marked "no", indicating the claimant was not able to perform substantial gainful activity, which is not an appropriate question for the claimant's representative to have asked, as that is an issue which is reserved for [the] Commissioner…. Additionally, Dr. Amis indicated the claimant has to elevate her legs 2-3 hours during the workday. However, his treatment records do not support either the proposition that the claimant has to elevate her legs, nor that she was doing so as often or for as long as he suggests (Ex. 9F, 8F, 11F). As I look at her daily responsibilities, they are not consistent with elevating

her feet that often, nor with Dr. Amis' limitation to only standing for 15 minutes at one time and for an hour total in an 8-hour day. At most, these may have been temporary limitations. Otherwise, however, and despite the lack of support for them in the claimant's subsequent treatment records, I essentially adopted Dr. Amis' May 2014 limitations in the claimant's [RFC] assessment.

(Tr. 21).

Plaintiff complains that the ALJ did not point to specific records to support his explanation that Dr. Amis's treatment records do not support his opinion that she has to elevate her legs, much less for as long as 2-3 hours per day. However, neither does Plaintiff point to any clinical or treatment record other than the RFC opinion itself that actually does support the limitation.

The undersigned has carefully examined the entirety of Plaintiff's medical records and finds little to no documentation of clinical evidence documenting any consistent level of swelling, or otherwise to support Dr. Amis's opinions that Plaintiff would need to elevate her legs/feet 2 to 3 hours per day. Most of the few records documenting swelling occur years earlier in Plaintiff's treatment, within the first years of her injuries and surgeries. Following her initial 2004 and 2005 surgeries, Plaintiff returned to work full-time, got married, and had two children. Plaintiff returned to treatment in August 2012 after a period of absence, when she broke her toe on a stair and underwent additional surgery. However, even after re-entering treatment at that time, Plaintiff returned to work and went for relatively long periods without treatment. (Tr. 665, record dated 10/25/13 noting that Plaintiff had called for refill on Percocet but had not been in to see Dr. Amis since 2012).

Plaintiff's claimed onset of disability coincided with a follow-up appointment on February 18, 2014. Dr. Amis's record on that date reads:

10

> At this time she has chronic ankle pain on a daily basis and finds she is not able to do anything besides go to work. By the end of the day she is in severe pain and unable to ambulate around the house. Today we had a long discussion in regards to her treatment options and quality of life. She understands that she is likely going to need bilateral ankle fusion surgeries in the future but at the age of 30 she is very youn[g] for this. My recommendation at this time is for her to begin to consider long term disability. We discussed this at length today and she was in agreement. She is going to begin taking the necessary steps with the disability process and understands I will support her in any way I can. I will plan on seeing her back as needed.

(Tr. 655). Dr. Amis subsequently completed short-term disability paperwork on Plaintiff's behalf, first opining that Plaintiff should be off work for 12 weeks, and then more indefinitely as discussed by the ALJ. On March 3, 2014, he completed a form opining that her condition has been the "same or similar" since 2004 up to the present, but is "gradually getting worse." However, her diagnosis has never changed, and no new symptoms (including swelling) were ever noted in her records. As noted by the ALJ, the forms that Dr. Amis completed reflect the same degree of limitation beginning in 2012 even though Plaintiff continued to work 40-45 hours per week in a job that required her to stand most of the day at that time. Last, Plaintiff appears to have been discharged from care in July 2014. (Tr. 780).

Plaintiff refers to her own testimony that she elevates her legs 4-5 hours a day, but as stated, the ALJ reasonably discredited that testimony. As indicated in the above summary of the sequential analysis, it is the Plaintiff who retains the ultimate burden of proving that she was disabled in this case. *See Born v. Sec'y of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990).

### 3. Additional Argument In Reply Memorandum Re Standing Limitation

In her reply memorandum, Plaintiff adds in a new argument that the ALJ failed to address the limitation offered by Dr. Amis that she can stand for no more than one hour

total in a day. To the extent that this argument is not presented in (at most) an cursory and oblique manner in Plaintiff's statement of Errors, it is not cognizable as first presented in her reply memorandum.

To the extent that a reviewing court would address the error at all, the undersigned alternatively finds it without merit. In addition to the "good reasons" provided for finding portions of Dr. Amis's opinion about the need to elevate Plaintiff's feet/legs not well supported, and contradicted by other substantial evidence in the record, Plaintiff's premise that the ALJ failed to discuss this issue is incorrect. The ALJ not only discussed this specific limitation, but sought out additional testimony from the vocational expert that included it. (Tr. 23). The VE testified that the jobs that Plaintiff could perform would be unaffected by the additional restriction to standing/walking no more than one hour per day, consistent with Dr. Amis's May 2014 RFC opinion.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

　　　　　　　　　　　　　　　　　　 /s Stephanie K. Bowman
　　　　　　　　　　　　　　　　　　Stephanie K. Bowman
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JENNIFER STUMPF, | Case No. 1:16-cv-991 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).